```
 1                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
 2

 3   PEOPLE FOR THE ETHICAL,        :  Civil Action
     TREATMENT OF ANIMALS,          :  No. 1:11-cv-00765-ABJ
 4                                   :
                     Plaintiff,      :
 5   v.                              :  August 4, 2011
                                     :  9:56 a.m.
 6   MERCK & CO., INC.,              :
                                     :  Washington, D.C.
 7                                   :
                     Defendant.      :
 8   ............................:

 9

10                    TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE AMY BERMAN JACKSON
11               UNITED STATES DISTRICT COURT JUDGE

12

13   APPEARANCES:

14   For the Plaintiff:      Ms. Susan L. Hall
                             PETA
15                           1536 16th Street, NW
                             Washington, D.C. 20036
16                           (202) 641-0999

17                           Mr. Daniel Kinburn
                             PHYSICIANS COMMITTEE FOR
18                           RESPONSIBLE MEDICINE
                             5100 Wisconsin Avenue, NW, Suite 400
19                           Washington, D.C. 20016
                             (202) 686-2210
20                           shall@fairchild.com
                             dkinburn@pcrm.org
21

22   For the Defendant:      Mr. Anthony Herman
                             Mr. Keir D. Gumbs
23                           COVINGTON & BURLING LLP
                             1201 Pennsylvania Avenue, NW
24                           Washington, D.C. 20004-2401
                             (202) 387-8680
25                           aherman@cov.com
```

1    APPEARANCES (Continued):

2    Court Reporter:              Ms. Lisa Schwam, CSR, CRR, RMR
                                  Official Court Reporter
3                                 Room 4702-A, U.S. Courthouse
                                  Washington, D.C. 20001
4                                 (202) 354-3238
                                  LisaSchwam@aol.com
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Proceedings reported by machine shorthand, transcript
      produced by computer-aided transcription.

1                      P R O C E E D I N G S

2              THE DEPUTY CLERK:  Your Honor, calling Civil Case

3    11-065, People for the Ethical Treatment of Animals v. Merck &

4    Co., Incorporated.

5              Will counsel please approach the podium and identify

6    yourself for the record.

7              MS. HALL:  Susan Hall on behalf of the People for the

8    Ethical Treatment of Animals.

9              THE COURT:  Good morning, Ms. Hall.

10             MR. KINBURN:  Dan Kinburn, cocounsel for PETA.

11             THE COURT:  Good morning.

12             MR. HERMAN:  Good morning, your Honor.  Tony Herman

13   from Covington & Burling.  With me is my partner, Keir Gumbs.

14             THE COURT:  Thank you.  We're here on cross-motions for

15   summary judgment.  Under the circumstances, it's hard to know

16   which side to start with, but I think I probably have more

17   questions for Ms. Hall so why don't we start with you.

18             MS. HALL:  Sure.  Section 14(a) of the Securities &

19   Exchange Act reflects congressional intent that fair corporate

20   suffrage is an important right that attaches to every equity

21   security bought on a public exchange.  The notion is to give

22   true vitality to corporate Democracy.  Congress enacted this

23   statute, and the SEC, through Rule 14a-8, gave greater meaning

24   to it by allowing shareholders to have access to proxy

25   solicitations, to communicate with other shareholders on

1   important major issues of the day and to sound out the board on

2   important public policy issues.

3          PETA filed a shareholder resolution with Merck relating

4   to transparency in animal testing.  Merck chose to exclude this

5   resolution and, as a consequence, PETA filed this suit because

6   the 2011 proxy statement was false and misleading under

7   Section 14(a) and under Rule 14a-9a.

8          THE COURT:  So why isn't your case moot?

9          MS. HALL:  The case isn't moot for a number of reasons.

10          First of all, when the proxy statement was issued,

11  Merck said we should have filed suit right then.  Well, there

12  was no case or controversy then.  And not only that, we filed

13  suit promptly.  We filed a summary judgment motion promptly.

14          THE COURT:  What does a summary judgment motion do to

15  get your claim heard promptly?

16          MS. HALL:  It advances the ball.  It says there's no

17  fact issues.  It says we don't need a trial.  It says --

18          THE COURT:  But it doesn't say we need relief.  How do

19  you get relief when you want it quickly in this court?  I know

20  that PETA knows this because PETA has multiple pending

21  preliminary injunctions on this Court's docket.

22          MS. HALL:  Well, that was one form of relief.  In the

23  complaint we asked for that form of relief, and we asked for a

24  special meeting.

25          THE COURT:  Still -- you asked for injunctive relief.

1          MS. HALL:  And a special meeting is injunctive

2     relief.

3          THE COURT:  Where is the authority for me to order

4     that?

5          MS. HALL:  Well, this is a court of equity.  This Court

6     knows the scope of equitable jurisdiction because, in fact, in

7     the case of *AG v. District of Columbia*, your Honor says that to

8     equity jurisdiction is to do equity and to mold a degree -- a

9     decree -- that brings a proper remedy to a wrong.

10         THE COURT:  And that was based on specific language in

11    a specific statute that gave the Court specific authority to

12    grant broad relief.

13         Where do you find that in this case?

14         MS. HALL:  I find that in the *Roosevelt v. Du Pont* case

15    where then Judge Ginsburg said that when a shareholder

16    resolution is omitted from a proxy statement, that the Court has

17    the power and the authority to grant both declaratory and

18    injunctive relief.

19         THE COURT:  The specific injunctive relief ordering

20    that it be included in the proxy materials.

21         Where does that case give me the authority to reach the

22    remedy that you're seeking?

23         MS. HALL:  Well, injunctive relief can come in more

24    than one form.

25         THE COURT:  Injunctive relief, I have to have the

1    power.  I don't have plenary power to do anything I want any

2    time.

3            Would it be your position that if you said to me,

4    really, our best way of communicating with the shareholders

5    would be to get their home addresses and go door to door and

6    talk to them individually about our position, that would really

7    give us the opportunity to communicate with them and educate

8    them about these important corporate issues; so Court, why don't

9    you enjoin them to do that.

10           What's the difference between that and saying I have to

11   force them to hold a special shareholders meeting?  Where is the

12   authority that I have to do that?

13           MS. HALL:  Well, I think it's inherent in the Court's

14   equitable powers and the fact that in the *Du Pont* case, that

15   Justice Ginsburg treated it as an application for a stay or an

16   application to enjoin the party to include the resolution.

17           In this case, the time frame was very limited.

18           THE COURT:  There is not one preliminarily injunction

19   that I have pending before me that has as much time as you did.

20           MS. HALL:  Well, then, let me go to the second point,

21   which is when Merck came to us and said we need more time, they

22   had in front of them --

23           THE COURT:  That has nothing to do with my analysis

24   here.  I'm talking about the time that you had.

25           The day you showed up at the courtroom door, you had a

1   month -- more than a month -- before the annual meeting was

2   supposed to take place.  But you did not seek either a TRO or

3   preliminary injunction.  So even if they had filed -- had never

4   asked for an extension of time and you had never consented, a

5   motion for summary judgment would have not teed it up in time,

6   but there were procedural mechanisms available to you to tee it

7   up before May 24th.

8              Why does that not count against you in this case?

9              MS. HALL:  Well, let me make the point that if the

10  summary judgment motion had proceeded in the ordinary course, it

11  would have been before your Honor before May 24th.  It would

12  have been before your Honor on May 19th.

13             THE COURT:  Oh, and has there ever -- does the summary

14  judgment -- is there any local rule or any federal rule that

15  calls for a summary judgment motion to be ruled on in five days?

16  Has that ever happened?

17             MS. HALL:  No, but --

18             THE COURT:  But is there a federal rule that gets you a

19  ruling in five days if you want one?  Of course.

20             MS. HALL:  It depends on the court.

21             THE COURT:  No, it doesn't depend on the court.  You

22  don't have a choice as a court about whether you want to rule on

23  a TRO or not.  You have to gear up and rule.  That's what we do.

24             But you don't have to do that for summary judgment.

25  And if there had been a cross-motion, which there was, even with

1   no extension, that pushes it past the 24th with no extensions

2   whatsoever because they get -- you get the last reply -- or they

3   get the last reply.  But there are seven more days that are

4   added on the end that would have put it the 24th.

5           And you're sophisticated attorneys.  You knew that.

6   You chose not to do it.

7           MS. HALL:  We chose not to do it because Merck, in

8   asking for an extension --

9           THE COURT:  You chose not to do it the day you filed

10  the complaint.  That's when you filed the motion for preliminary

11  injunction.  You waited a week.  And you moved for summary

12  judgment on the 28th.  You chose not to move for preliminary

13  injunction on the 28th.  Merck still hadn't done anything.  It's

14  not Merck's fault.

15          Now, why does the fact that your claim had this other

16  remedy in it make that all not moot -- make the whole complaint

17  not moot?

18          MS. HALL:  Because both remedies were equitable.  And

19  when we judged that to -- if we had sought a preliminary

20  injunction or a TRO, in our estimation they would have to have

21  put the meeting off.  And we judged that --

22          THE COURT:  Well, if you're telling me that I have the

23  plenary authority to order them to have an entirely separate

24  meeting, don't I have the authority to tell them put it off?

25          MS. HALL:  Yes, you do.  But that in our -- we deemed

1    that to be much more burdensome because the proxy was out, the

2    shareholders had been noticed, the place and time of the meeting

3    had been set.  And to put all that off and then include our

4    resolution seemed to us far more disruptive -- a far more

5    disruptive way to proceed.

6         THE COURT:  But if you had come in for a TRO and I had

7    said absolutely, their resolution has to be mailed to all the

8    shareholders in advance of the meeting because the point of

9    proxy statements is to communicate not only with the people who

10   show up at the meeting, so putting you on the agenda wouldn't

11   have been sufficient, but it has to reach all the people that

12   don't show up so you need to do another mailing.

13        MS. HALL:  Precisely.

14        THE COURT:  I could have done that.

15        MS. HALL:  And they can do that now too.

16        THE COURT:  But you let the time go -- there is no more

17   2011 proxy statement.  It's gone.

18        MS. HALL:  I understand that.

19        THE COURT:  There's no more annual meeting.  It's

20   gone.

21        MS. HALL:  But they have the ability, because they're

22   before this Court, to hold a special meeting.

23        THE COURT:  Do you have any authority for the

24   proposition that that is a remedy available for a violation,

25   assuming there was one, of 78n?

1          MS. HALL:  I do not have a case that says call a

2     special meeting of shareholders for failure to include a

3     shareholder resolution.  However, I do say that it is certainly

4     within this Court's equitable powers to right the wrong.  And

5     the way to right the wrong, since the meeting has already been

6     held and the proxy material has already issued, is to order --

7          THE COURT:  That wrong doesn't rest on their table.

8     The passage of time, you let it go by, so why do I have to right

9     that wrong that you didn't even bother to right when you had the

10    chance?

11         MS. HALL:  Well, your Honor, in the pleading, one of

12    the forms of relief we asked for was a special meeting of

13    shareholders.  Merck was on notice of that.  It was also

14    specifically the only remedy asked for in the summary judgment

15    motion.

16         So when they asked for the extension of time, they knew

17    there was one and only one remedy left.

18         THE COURT:  There's only one lawsuit.  Before we even

19    get to the remedies, the lawsuit said this is a suit about the

20    failure to enclose our proposal in your 2011 annual meeting

21    proxy materials.  If we lose that opportunity, we will suffer

22    irreparable harm.

23         That's the lawsuit.  And that opportunity passed, and

24    now you're standing here and saying, well, you can fix it,

25    Judge, with this extraordinary remedy that I have no precedent

1    that any court has ever ordered ever under a New Jersey statute

2    that doesn't permit it.

3         I mean, I am not the Wizard of Oz.  I'm a federal

4    judge.  I have specific jurisdiction.  I don't have jurisdiction

5    to do anything that appeals to me.

6         MS. HALL:  Well, you have jurisdiction over Merck.  And

7    the statute -- the New Jersey business statute -- allows Merck

8    to call a special meeting of shareholders for any reason at any

9    time.

10         THE COURT:  Well, and then the second sentence says,

11    "notwithstanding that sentence."  If it's a shareholder that is

12    seeking the meeting, they have to hold more than 10 percent of

13    the stock.  I mean, you can imagine why that rule is in there.

14    This is a huge company.  There's probably a lot of people out

15    there who own as much stock as PETA.

16         Do they have to hold a meeting for every stockholder

17    that has an issue?  There are many issues of corporate

18    governance that are of great public concern.  I'm not suggesting

19    that your issues aren't of significant public concern.  I'm

20    suggesting that you made choices here that make it very

21    difficult for me to do anything about them for the 2011 annual

22    meeting, which has already passed.

23         MS. HALL:  Just one point that I would like to address

24    that you just made is this is not under the New Jersey Business

25    Corporation Act.  This is not a shareholder calling for a

1    meeting.  It is the company that is calling for the meeting.

2           The section of the New Jersey Business Corporation Act

3    14A:5-3 has two provisions.  One allows the company to call a

4    meeting.  The other allows shareholders with 10 percent interest

5    to call the meeting.

6           THE COURT:  What's the authority other than creativity

7    on your part that ties that power as an implied remedy for a

8    violation of a statute that deals with misleading proxies?

9           *Roosevelt* said there is an implied right of action

10   under the statute because the statute's all about proxies.  They

11   have to be fair.  They can't be misleading.  If we find out that

12   there's about to be a misleading proxy, we, the Court, find that

13   a plaintiff has a private right of action to enforce their

14   communication opportunity.  And the only way to do that is to

15   enjoin the defendant to include this material in their proxy

16   materials.  There has to be that implied right of action or the

17   statute has no force.

18          That's *Roosevelt*, right?

19          MS. HALL:  Correct.

20          THE COURT:  Why does there have to be the right of

21   action that you're seeking to give that statute force?  Where is

22   the authority to apply that in the statute?  *Roosevelt* didn't do

23   that.

24          MS. HALL:  The statute being Section 14(a) or the rule?

25          THE COURT:  Well, an implied right of statute has to be

1    implied in the statute, but this statute says follow the rules,

2    essentially.  So the rules are somewhat embraced in the statute.

3            What is it about either the statute or the rules that

4    gives rise to the brand-new implied right of action that you're

5    asking me to find here that no courts have ever ordered it

6    before but you're telling me I can; I have to divine the power

7    to order it and the power to imply a right for you to ask me for

8    it in the statute?

9            MS. HALL:  Well, I dare to say we're still talking

10   about the equitable powers, and Section 14(a) of the Act and

11   SEC Rule 14a-8 don't specifically say, yes, Court, you can

12   compel Merck to call a special meeting.

13           THE COURT:  And that's because -- I think your

14   cocounsel wants to confer with you.

15           MR. KINBURN:  Your Honor, if I might address the

16   issues.

17           Corporations are governed by two sets of laws.  They

18   are governed by the state corporate stature where they're

19   incorporated.  Merck is a New Jersey corporation.  They are also

20   covered by the SEC law and regulations.

21           So I think what we're saying is that Merck has to

22   comply with all the laws.  It has to comply with the Securities

23   & Exchange Act.  It has to comply with New Jersey corporate law.

24           THE COURT:  So you're saying that I can apply a right

25   of private action to sue for a special shareholders meeting from

1   the New Jersey corporate law that specifically says a

2   shareholder cannot seek a special meeting unless they have more

3   than 10 percent of the stock?

4            MR. KINBURN:  Your Honor, there is no legal question

5   about whether there is a private right of action under the

6   Securities & Exchange Act because the D.C. Circuit has held that

7   and the U.S. Supreme Court has held that.

8            THE COURT:  The D.C. Circuit held that there is a

9   private right of action to seek an injunction to include your

10  materials in the annual meeting proxy statement.

11           MR. KINBURN:  No.  I believe the holding is broader

12  than that.

13           THE COURT:  Tell me why.

14           MR. KINBURN:  What the holding is was that injunctive

15  and declaratory relief is available.  Injunctive relief is

16  inherently going to have to be altered depending on the factual

17  situation that's before the Court.

18           THE COURT:  Why did the Court say in *Roosevelt* that

19  injunctive relief was available?

20           MR. KINBURN:  It said that because it found a right,

21  and where there's a right, there's a remedy.

22           THE COURT:  It found a specific remedy to enforce a

23  specific right.  And the right was to have your views heard at

24  the annual meeting.  There's nothing about *Roosevelt* on its

25  terms that goes as far as you want me to take it.

| | |
|---|---|
| 1 | And we're putting aside the whole question of whether |
| 2 | it's even good law.  But if it is good law, it based its opinion |
| 3 | on a number of things.  The first thing it said is, |
| 4 | historically, courts have always recognized this right.  And |
| 5 | you're telling me that, historically, you can't find a single |
| 6 | situation where a court has recognized the right that you're |
| 7 | asking for. |
| 8 | The second thing it said is let's look at the statute. |
| 9 | What's the statute about?  How do we give voice to Congress' |
| 10 | intent in the statute?  And I'm trying to see how -- I have to |
| 11 | extend that to give you what you want.  And I don't see the |
| 12 | language in *Roosevelt* that let's me do it, and I don't see the |
| 13 | underlying reasons that *Roosevelt* looked to to get where they |
| 14 | got as getting me as far as you want to go. |
| 15 | MR. KINBURN:  Well, your Honor, I think -- there are |
| 16 | two actors here.  There's Merck and there's PETA, okay.  And I |
| 17 | think you have to look at both -- the actions of both. |
| 18 | Here's what happened:  We submitted a shareholder |
| 19 | resolution.  That was defective.  And Merck did the right thing. |
| 20 | It, within 14 days, notified us that it was defective in two |
| 21 | different ways, and we responded to that by recognizing that |
| 22 | Merck was right and we had been wrong and we corrected both of |
| 23 | those problems.  And Merck, recognizing that we had done nothing |
| 24 | wrong in the second submission, didn't send us a deficiency |
| 25 | letter.  They could have, but they didn't.  So that was Merck's |

1    action.

2          Merck then, instead of sending us a deficiency letter,

3    goes to the SEC and confuses the SEC, successfully.  So the SEC

4    issues what is clearly an incorrect no-action letter.

5          THE COURT:  All right.  Well, you participate in the

6    SEC.  You write them a letter.

7          MR. KINBURN:  Right.

8          THE COURT:  And then when they make their confused

9    decision, you ask them to consider their confusion and issue a

10   different decision.  They don't do that.  So now Merck, which is

11   wrong, in your view, has at least been joined in its wrongness

12   by the agency whose job it is to give advice about how to

13   enforce the securities laws of the United States.

14         MR. KINBURN:  Correct.

15         THE COURT:  Correct.  And at this point, there's

16   somebody else who could step into the breach, the United States

17   District Court, and you don't go there.

18         MR. KINBURN:  No, because they haven't violated the law

19   yet.  It's not illegal to ask for a no-action letter even if you

20   realize that you're not entitled to one.

21         THE COURT:  You wait until you know what's going to be

22   in the materials and you promptly sue.

23         MR. KINBURN:  Right.  We promptly sue asking for two

24   forms of relief; to amend the proxy materials or for a special

25   meeting.

1        THE COURT:  But you can't seriously say to me at this

2    point that the fact that you made a deliberate, strategic

3    decision to not ask for a TRO and to not ask for a preliminary

4    injunction should have no bearing on how I analyze this case?

5        MR. KINBURN:  But we both made -- Tony and I both

6    made --

7        THE COURT:  Tony didn't do anything.

8        MR. KINBURN:  He did, because here's the thing:  I

9    think we need to look at the complexity of the situation.

10       THE COURT:  The complexity of the situation is that you

11   showed up in this Court on April 21st with a choice of boxes to

12   check off, doors to open, rules to invoke, that you know full

13   well -- and even if you didn't, even if this was your first case

14   ever, you would be held to know the Federal Rules of Civil

15   Procedure and the local rules of this Court, but I know you know

16   them.

17       MR. KINBURN:  I do, I do, absolutely.  And I'm not --

18       THE COURT:  You know perfectly well that a motion for

19   summary judgment is the least likely mechanism available to tee

20   something up.  The fact that we're even sitting here having this

21   hearing now is vaguely amazing on the Court's calendar.

22       MR. KINBURN:  Right.  But I think you're leaving aside

23   other portions of what's involved here.  Merck has 3 billion

24   shares outstanding.  In order for it to hold a proper annual

25   meeting, it needs to transmit its proxy materials to everyone

1    who owns, you know, one or more of those 3 billion shares.   It

2    has to print it.   It has to mail it.   It has to deliver it.

3          The annual meeting has a bunch of things that are

4    really, really important to Merck that have to happen.   The

5    board has to be -- you know, there are board members who are up

6    for election.   There are -- you know, there's financial

7    disclosures to the shareholders.   There are all these things

8    that Merck has to do that are way more important to Merck than

9    the shareholder resolutions are.

10          And it's specifically PETA's shareholder resolution is.

11          THE COURT:   So because it's so unimportant in light of

12    everything else that goes on in the annual meeting, they are

13    supposed to gin up the entire mechanism again just for your

14    resolution?

15          MR. KINBURN:   Well, yes, because they chose to put you

16    in a position where the only way you could right the wrong --

17          THE COURT:   You chose to put me in that position.

18          MR. KINBURN:   No.

19          THE COURT:   Absolutely.

20          MR. KINBURN:   He asked for the extension of time.

21          THE COURT:   No, no, no.   You never moved for a TRO.

22    You never moved for a preliminary injunction.   You chose to put

23    me in this position.

24          MR. KINBURN:   We have no obligation to move for that.

25          THE COURT:   No obligation.   But this is equity, equity,

```
 1    equity, as Ms. Hall said.  Equity, I look at your hands, I look
 2    at your conduct.  The law of this circuit is absolutely clear
 3    that if you have an opportunity to get relief and you say I
 4    don't want it, I have to take that into consideration.
 5              MR. KINBURN:  I have heard no claim by Merck in any of
 6    its papers that the shareholder -- having a special meeting of
 7    shareholders will constitute any hardship whatsoever.
 8              THE COURT:  They specifically did say it was costly.
 9              MR. KINBURN:  There is no affidavit.  There is no
10    competent evidence before you of that.  As far as I know and as
11    far as you know, he can push a button.  I mean, it's just one
12    page.
13              THE COURT:  Tell me where in Roosevelt the Court gave
14    me authority to do that.
15              MR. KINBURN:  As long as you have equitable authority
16    to issue injunctive relief, you have all the authority you need.
17    We have --
18              THE COURT:  Do you have any authority for that
19    proposition?
20              MR. KINBURN:  Merck committed --
21              THE COURT:  You guys are -- I understand your position,
22    but I'd like some backup for it.
23              MR. KINBURN:  All we have is the Supreme Court and the
24    D.C. Circuit.  That's all we rely on.
25              THE COURT:  All right.  Let me hear from Merck.
```

1          MR. HERMAN:  Good morning, your Honor.  Merck of course

2     agrees with the Court that this case is moot.  PETA engaged in a

3     series of conscious decision making that led to the shareholders

4     meeting going by the boards, that led to the proxy material

5     going out, without including PETA's proposal.  In fact, this

6     decision making really has its genesis way back on the 20th when

7     Merck sent a letter to the SEC seeking a no-action response.

8     And in that letter, they informed PETA by copy, as they're

9     required to do under the rules.

10          THE COURT:  Well, they're saying if they had come in

11     then, you would have said there's no case in controversy yet.

12     You don't know what's going to be in our proxy materials.

13     That's not ripe.

14          That's probably right, isn't it?

15          MR. HERMAN:  I think not actually, your Honor.  I think

16     at that point, the declaratory judgment action would have been

17     appropriate.  I think there was a real threat.  Merck, after

18     all, made a representation to the SEC staff that it wasn't going

19     to include the proposal in the material.  And I think that would

20     have sufficed for jurisdiction.

21          But even putting that to the side, I mean, it's very

22     clear, as your Honor recognized, that when they filed the

23     lawsuit in April, they didn't seek a TRO.  They didn't seek a

24     PI.  They sought something else.

25          THE COURT:  Well, let me ask you something.  Let's say

1    they filed on April 14th, the day they know for sure it's not in

2    your materials.  And let's say they moved for a TRO.  And

3    April 16, I said, you're right, that they have the stock for

4    more than a year before the date that the proposals were

5    ultimately due.  Maybe not when they came in the first time, but

6    by the time they showed up the second time, they had it.  And

7    your window still hasn't closed.  They're right.

8         What could you have done about it having already mailed

9    your proxy statements to how many billions of stockholders?

10        MR. HERMAN:  Merck at that point could have done a

11   supplemental mailing and mailed out PETA's proposal and the

12   Court certainly could have, putting aside the substantive

13   issues, putting aside whether there's a deed of private right to

14   action and whether, in fact, 14a-8(b) was not violated here;

15   putting all that aside, I think the Court certainly had

16   authority and I think Merck would have had the wherewithal at

17   that point to do a supplemental mailing and to send the

18   shareholders a copy of that proposal.

19        But of course, that's not what PETA sought.

20        THE COURT:  I understand that.  Does the fact, though,

21   that their complaint included at the end when they list various

22   grounds for relief a separate type of relief -- not a separate

23   ground for relief, and actually I think that is really, really

24   important -- but they identified a separate remedy, okay, put it

25   in the -- we want you to do this, which they knew, of course,

1   when they wrote couldn't be done, and if not, tell them to have

2   a special meeting, does that fact that they included that in

3   there make this case not moot?

4           MR. HERMAN:  No, I don't think so, your Honor.  It

5   would only change the -- it would only make the case unmoot if,

6   in fact, that were a proper basis -- a proper ground of relief.

7   And of course, there's no authority that permits the Court to

8   order a special meeting.

9           The New Jersey statute is very clear.  It also provides

10  only for that basis only for relief to be ordered by a New

11  Jersey Superior Court.  It's defective for a variety of reasons.

12          And if, in fact, that were a proper remedy, perhaps

13  then the case wouldn't be moot, but certainly it is not a proper

14  ground for relief.  And so as a consequence, the only possible

15  relief that would be left is to undue the events that have

16  already taking place; that is, to undue the shareholders meeting

17  of May 24th and to send the proposal in the proxy material.  And

18  of course, that can't happen because it's been overtaken by

19  events based on PETA's decision not to seek expedition, not to

20  seek a TRO.

21          They went so far, by the way, your Honor, in their

22  summary judgment motion not only not to seek a TRO, not to seek

23  a PI, not to seek any sort of expedition at all, but they

24  requested oral argument.  How on earth could they possibly have

25  briefed this with an end date of May 19th -- putting aside my

1    vacation plans -- an end date of May 19th and oral argument and

2    received a decision before May 24th?  That would be

3    unprecedented in the annals not only of this Court, but I think

4    of any court.

5         They made a series of very deliberate, strategic

6    choices that put them in this conundrum.  And having made those

7    strategic choices under the *Armstrong* case, under the other

8    cases of this Court, the *Newdow* case that we cite of the D.C.

9    Circuit, the law is very clear they made decisions.  They should

10   be held to those decisions, and this case is moot.

11        THE COURT:  Well, they say there's another -- we had

12   the special meeting right there in the complaint, and it's

13   equity, Judge.  You have lots of power under equity.  You can

14   do -- you can order them to do anything that's legal under

15   equity.

16        What's your response to that?

17        MR. HERMAN:  Here, there's a statute that precludes

18   such an award, your Honor.  I don't know of any free-floating

19   doctrine of equity where the Court can like a grab bag pull out

20   some sort of relief that a court might think is appropriate

21   under the circumstances.

22        But even if there were such a grab bag here, it's

23   precluded by a statute.  The statute says that such an

24   application has to be made to a superior court judge in the

25   state of New Jersey supported by shareholders who hold at least

1   10 percent of the shares.  And that requirement, that condition,

2   wasn't met.  And that, in and of itself, suffices to preclude

3   such an equitable award.

4           THE COURT:  All right.  Thank you.

5           MR. HERMAN:  Thank you.

6           THE COURT:  Actually, I do have one more question for

7   you.  One of the arguments you make is that *Roosevelt* isn't good

8   law anymore.  And you say that because of the *Sandoval* decision.

9   But the *Roosevelt* court certainly expressly considered *Virginia*

10  *Bankshares* and *Touche Ross*, and the fact that according to the

11  Supreme Court law as it understood it, there was a very high

12  hurdle to overcome before you could apply a private right of

13  action.  And the Supreme Court has had the opportunity to

14  overrule *Borak* but it hasn't.

15          I feel like this issue is more complicated than either

16  one of you acted like it was in your briefs.  Are we sure that

17  *Roosevelt* isn't good law because it's not like it was an old,

18  old opinion, the Supreme Court started shutting down on private

19  rights of action.  They actually considered that when they

20  ruled.

21          MR. HERMAN:  I think it is a complicated issue.  I

22  don't mean to suggest -- and if our brief suggested that, they

23  weren't intended to suggest that it's a simple, clear-cut issue.

24  I think it is a complicated issue.  I think your Honor is right

25  that *Borak* reached a decision.

1          The basis of the decision strikes me as very

2     problematical in light of the subsequent cases like *Touche Ross*.

3     I mean, the basis of the *Borak* decision, of course, was that

4     Section 27, the jurisdictional section in the '34 Act, showed

5     that Congress intended for there to be a private right of

6     action.  And we now all know that the Court -- the Supreme

7     Court -- has called that much into question.

8          But I agree, your Honor, the Court has had

9     opportunities -- the Supreme Court has had opportunities --

10    specifically to say that *Borak* was no longer good law, is

11    declined to take those opportunities.  I don't think it's

12    clear-cut, but I do think that I suspect, given the current

13    configuration of the Court and given the evolution of its

14    caseload with respect to private rights of action, I think were

15    the Court to consider that, I believe that the Court would

16    conclude that at this point, if it had an opportunity to

17    squarely address the issue, which it never has had, I think that

18    the Court would preclude there is not a private right of action.

19         The securities laws, after all, '34 Act does have three

20    provisions in it that expressly permit a private right of

21    action.  And that creates a very, very heavy presumption that

22    Congress here didn't mean to establish a right of action.  But I

23    don't mean to suggest that it's simple.  It's especially

24    complicated, I understand, for a district court in the face of

25    *Roosevelt*, in the face of *Borak*, to come out the other way.  But

1    in any event, the Court need not reach that issue because this

2    case simply is moot.

3            THE COURT:  All right.  Thank you.  I'm going to give

4    you about two minutes, but I think I'm ready to rule.

5            MR. KINBURN:  Okay.  Your Honor, three quick points.

6            First of all, with respect to *Roosevelt* and *Borak*,

7    stare decisis.  I mean, Merck is asking you to be the ultimate

8    activist judge.

9            THE COURT:  Well, no.  I'm not going to overturn -- I

10   don't need to address the continuing vitality of *Roosevelt* to

11   rule here.

12           MR. KINBURN:  Okay.

13           THE COURT:  So I'm not -- I believe that your brief

14   also was unduly dismissive of their argument that *Roosevelt*

15   isn't good law anymore.  It certainly is important for -- yes, I

16   have to follow what the D.C. Circuit says, but I can tee it up

17   for the D.C. Circuit by saying, "D.C. Circuit, I don't think

18   your opinion is good law anymore in light of more recent Supreme

19   Court decisions," and then the D.C. Circuit can tell me what

20   they think of that.

21           But I have to decide first so I think everybody -- I

22   felt that it's more serious than you gave it credit for.

23           MR. KINBURN:  Okay.  My second point is that I guess I

24   pose the question hypothetically to my adversary, why is our --

25   why are our tactical decisions relevant to the outcome and his

1   tactical decisions are not relevant to the outcome when they

2   both were made in our client's best interests, presumably --

3          THE COURT:  Because you're the plaintiff asking me to

4   grant equitable relief.  And because there are cases that say

5   what you do in asking me for that relief, I absolutely have to

6   consider.  It's not a hypothetical question, and it isn't

7   directed to him.

8          You're asking me a question, and that question has an

9   answer.  And the answer is found in the cases they cited,

10  including *Newdow v. Roberts*, which is a D.C. Circuit case, which

11  you've told me I have to listen to.

12         MR. KINBURN:  All right.  And the third point is

13  assuming that me and cocounsel screwed up and our failure to ask

14  for the TRO was a fatal flaw to our injunctive relief and the

15  right to a special shareholder meeting, we would still be

16  entitled under -- we would still be entitled to declaratory

17  relief, a finding that Merck violated the Act and put out false

18  and misleading proxy materials because that doesn't cause them

19  any work.  There's no hardship to Merck.  It's just the truth.

20  It's what happened.

21         And so I would say that even if we procedurally

22  screwed up --

23         THE COURT:  I think that's moot.  I don't think that

24  courts walk around giving advisory opinions about things that

25  happened in the past.

1          MR. KINBURN:  I think it's very important.  Remember

2     that we're going to be back with this next year.

3          THE COURT:  I have -- next year you will have had your

4     stock for more than a year, presumably.

5          MR. KINBURN:  We had our stock for more than a year

6     when we filed.

7          THE COURT:  Next year you will still have had your

8     stock for more than a year.  You will have had it for more than

9     two years.  And I'm not going to sit here and figure out what's

10    going to happen next year because next year you may decide that

11    Merck's treatment of animals is completely consistent with your

12    principles and there's nothing to say.  Or next year they may

13    grant your proposal that there's nothing to talk about.

14         MR. KINBURN:  Whoever the judge is who hears the next

15    lawsuit against Merck --

16         THE COURT:  I'm not going to assume that there's going

17    to be a next lawsuit.

18         MR. KINBURN:  Well, Merck has made several deliberate

19    decisions here that violated securities laws.  There should be

20    some consequence to that.  You have the authority to make there

21    be consequences for that.  Merck is saying because of some

22    tactical decision we made, that they participated in,

23    encouraged --

24         THE COURT:  No, no, no, no, no.

25         MR. KINBURN:  -- asked for.

1          THE COURT:  No.

2          MR. KINBURN:  All of that is on Merck.

3          THE COURT:  No, no.

4          MR. KINBURN:  All right.

5          THE COURT:  Merck had zero to do with the fact that you

6  did not ask this Court to intervene and help you out.  You said

7  I have that authority.  I choose not to take it.

8          MR. KINBURN:  That's true.  That's absolutely true.

9          THE COURT:  I cannot lay that at the feet of Merck.

10          MR. KINBURN:  No, I understand that.  And we did that

11  because our preferred remedy was the special shareholder

12  meeting.

13          THE COURT:  Your preferred -- okay.  So your whole case

14  comes down to whether your preferred remedy is a remedy that I

15  can imply from this statute?

16          MR. KINBURN:  Exactly.

17          THE COURT:  All right.  And I'm going to rule on that.

18          MR. KINBURN:  Okay.

19          THE COURT:  Thank you.  I'm going to take a five-minute

20  break, and then I'm going to come back and I'm going to rule

21  from the bench.

22      (Recess was taken from 10:37 a.m. to 10:44 a.m.)

23          THE COURT:  We're here on motions for summary judgment

24  and cross-motions for summary judgment filed by both of the

25  parties.  This complaint in PETA v. Merck is a complaint for

1    injunctive relief.  There's no need for the Court to

2    characterize this case in its own words because the plaintiff

3    did it in the first paragraph of the complaint, which says,

4    quote, "This is an action for injunctive relief to compel

5    defendant, Merck & Co., Inc., to include in the proxy materials

6    for its 2011 annual meeting a shareholder proposal submitted by

7    plaintiff."

8         That is the gist of the action.  This lawsuit is about

9    the proxy materials for the 2011 annual meeting.  The complaint

10   only contains one claim for relief.  It says, in plaintiff's

11   words in paragraph 29, "Rule 14a-8 provides shareholders with

12   access to management proxy solicitations in order to communicate

13   with other shareholders on matters of major concern and to send

14   out management on important public policy issues."

15        It says in paragraph 30, "Merck's omission of PETA's

16   shareholder proposal violated federal laws as set forth in

17   15 U.S.C. 78n(a) and 17 C.F.R. 240.14a-9(a)," which is the

18   misleading proxy rule.  They didn't even cite a violation of

19   14a-8, the proposal rule.

20        Paragraph 31, "Merck's omission of PETA's shareholder

21   proposal from its 2011 proxy materials constitute the loss of an

22   informational right to the plaintiff and its fellow shareholders

23   and renders the proxy solicitation inherently misleading."

24        32, "Plaintiff will suffer irreparable harm by losing

25   the opportunity to communicate its concerns with those

1    shareholders whose only connection with the annual meeting of

2    shareholders is through the proxy materials issued by Merck."

3         That is the claim in this case, as the plaintiffs

4    framed it.  This is a case about the adequacy of the proxy

5    materials issued on April 13 in connection with an annual

6    meeting on May 24th.

7         This is an injunction action.  Even in a case for

8    permanent injunction and not just motions for preliminarily

9    injunction, one element that the plaintiff must establish is

10   whether the plaintiff will sufficient irreparable harm absent

11   the injunction.  In the complaint, plaintiff alleges that it

12   would be irreparably harmed if it lost that singular,

13   particular, time-sensitive opportunity to communicate with its

14   fellow shareholders and to present a resolution to be considered

15   at the annual meeting.

16        Yet it is the plaintiff that let the time period in

17   which it could invoke and enforce that opportunity go by without

18   seeking it.  Now that time has passed, the plaintiff can't

19   complain now that the opportunity is lost.  Therefore, this

20   Court is going to grant Merck's cross-motion for summary

21   judgment and dismiss the case on the grounds that it is moot and

22   that the Court lacks jurisdiction to hear it.

23        The chronology in this case is important.  Because

24   we're here on cross-motions for summary judgment and there have

25   been declarations submitted to me, I'm going to note what the

1    undisputed facts are, but I believe that this ruling could have

2    been made simply based on the face of the complaint in the form

3    of a motion to dismiss as well.

4         I believe it is a material fact that is not in dispute

5    that PETA submitted its initial proposal on October 28th, 2010.

6    Merck responded on November 9th and indicated that it was going

7    to exclude the proposal on the grounds that PETA had not owned

8    the stock for more than a year before it submitted the proposal.

9    There is no dispute that Merck made that response, and I believe

10   there is no dispute that as of October 28th, PETA had not owned

11   the stock for more than a year.

12        On November 17, PETA, essentially, resubmitted the

13   proposal purporting to withdraw the first and submitting a new

14   one and indicating that now -- and the window for submitting

15   proposals had not yet closed -- we have owned the stock for more

16   than a year.  It also included in what it submitted on

17   November 17 a shareholder resolution, which is an item to be

18   considered at the annual meeting that, presumably, PETA thought

19   was sufficiently important that it should be presented to the

20   shareholders.

21        On January 20th, 2011, Merck sought SEC staff

22   concurrence that it could exclude the proposal from its proxy

23   materials.  PETA was aware of that.  On January 28th, it

24   submitted its own letter to the SEC to persuade them otherwise.

25   On March 16, 2011, the SEC advised the parties that it would not

1   recommend an enforcement action against Merck if it excluded the

2   proposal.  PETA did not take court action in that time.  It did

3   seek SEC reconsideration, which was denied on March 31st.

4        Merck's 2011 proxy materials, in connection with its

5   2011 annual meeting, were issued on April 13, 2011.  Merck's

6   annual shareholder meeting was scheduled for May 24, 2011.  The

7   complaint was filed on April 21st, after the proxy materials had

8   been issued, but before the annual shareholder meeting had

9   taken place.

10        The date of the upcoming meeting, which at that point

11   was still more than a month away, is specifically set forth in

12   the complaint.  But while the complaint is a complaint for

13   injunctive relief, it was not accompanied by a motion for a TRO

14   or a motion for a preliminary injunction.  And I want to point

15   out that notwithstanding what counsel argued in rebuttal here

16   today, this was not a screwup; not that excusable neglect could

17   create jurisdiction where jurisdiction does not exist.  This was

18   a strategic choice.

19        Plaintiff waited another week, and on April 28 it filed

20   a motion for summary judgment.  And even that was unaccompanied

21   by any request for expedition or preliminary relief.  Under this

22   Court's rules, even if the defendant had not sought any

23   additional time and even if the Court had taken up the motion on

24   the very day it was ripe, which is not required by a single rule

25   that governs this Court, the motion was not filed on a date that

1    provided for sufficient time for briefing and a ruling by

2    May 24th.  A party under our local rules gets 14 days to oppose

3    a motion for summary judgment, which would be May 12th.  There's

4    seven days reply, which is May 19.  But if there is a

5    cross-motion for summary judgment, there is another seven-day

6    briefing opportunity for a reply.

7         Meanwhile, a TRO can be heard right away.  And under

8    our local rules, the Court is required to hear a preliminary

9    injunction motion within 20 days unless it has already ruled.

10   There was more time available in this case than in all but one

11   of any of the other preliminary injunctions that have been filed

12   before this Court since it assumed the bench.

13        I want to make it perfectly clear that my ruling that

14   this case is moot has absolutely nothing to do with the fact

15   that Merck sought additional time to oppose the motion for

16   summary judgment or that PETA, as a courtesy of counsel,

17   consented.  PETA let its claim grow cold all by itself.  It

18   deliberately elected not to avail itself of the means provided

19   under the federal rules and this Court's local rules to have the

20   matter heard in time.

21        Because it is asking this Court to rule in equity, its

22   own conduct is relevant.  Under *Newdow v. Roberts*, 603 F.3d

23   1002, a D.C. Circuit case in 2010, the Court stated, "This

24   circuit, along with every other circuit to have considered the

25   issue, has held that a litigant who could have but did not file

1    for a stay to prevent a counterparty from taking any action that

2    would moot his case, may not, barring exceptional circumstances,

3    later claim his case evaded review."

4         The Court further held it was the duty of the

5    plaintiff, quote, "to make a full attempt to prevent his case

6    from becoming moot and that obligation included filing for

7    preliminary injunctions," close quote.

8         PETA, which urges me in its briefs to follow the

9    rulings of this circuit, which I have to do anyway, has provided

10   no circumstances, much less any exceptional circumstances, that

11   would military in favor of a relaxation of that rule.  PETA is a

12   regular litigant in this Court, and the Court can take judicial

13   notice of its docket which reflects the fact that it has filed

14   multiple motions for preliminary injunctions in this Court, and

15   it knows perfectly well that the way to tee something up for an

16   immediate ruling to avoid irreparable harm is through Rule 65

17   and not Rule 56.

18        PETA doesn't even try to argue that its claim to have

19   its proposal made part of the proxy materials and its resolution

20   presented at the annual meeting is not stale.  Rather, it says,

21   "Since we proposed an alternative remedy for the complained

22   violation of Section 78n(a), the Court still has jurisdiction

23   over the case."

24        It is true that in the relief section at the conclusion

25   of the complaint, PETA asked the Court to do several things.

1   One, to declare that Merck has violated 15 U.S.C. Section 78n.

2   Second, to enjoin Merck from omitting the plaintiff's

3   shareholder proposal and compel Merck to includes the proposal

4   in the 2011 proxy materials; or, in the alternative, they say,

5   compel Merck to call a special meeting of shareholders as

6   authorized by New Jersey law for the purpose of presenting the

7   shareholder proposal to the shareholders.

8            This suggestion of an alternative remedy is not

9   sufficient to confer jurisdiction on this Court for a claim that

10  is moot for several reasons.  First of all, the complaint is not

11  about a request for a special shareholder meeting.  It does not

12  on its face raise a claim of a legal entitlement to such a

13  thing.  The gravamen of the complaint is the alleged filing of a

14  misleading proxy statement, a proxy statement in connection with

15  the 2011 annual meeting that is over.

16           Second, the plaintiff has not provided the Court with

17  any authority that would establish that it has the power to

18  grant the alternative remedy.  The statute itself provides, New

19  Jersey law Section 14A:5-3, "Special meetings of shareholders

20  may be called by the president of the board or by such officers,

21  directors or shareholders as may be provided in the bylaws.

22  Notwithstanding any such provision upon the application of the

23  holder or holders of not less than 10 percent of all the shares

24  entitled to vote at a meeting, the Superior Court in an action

25  in which the Court may proceed in a summary manner for good

1    cause shown, may order a special meeting of the shareholders to

2    be called."

3         So if it's at the shareholder's instance, there is a

4    requirement of a 10 percent ownership of stock.  And plaintiff

5    says to me, "Don't look at the second sentence.  Don't let Merck

6    distract you with the second sentence.  Just look at the first

7    sentence."  But when the second sentence begins,

8    "Notwithstanding the first sentence," I kind of have to look at

9    the second sentence.

10        And I also point out that one of the primary cases the

11   plaintiff relies on, which is *Lovenheim v. Iroquois Brands,*

12   *Ltd.*, 618 F.Supp. 554, that supports the notion that the

13   opportunity that is at the heart of this action expires with the

14   annual meeting.  In that case, the plaintiff sought to enjoin a

15   Delaware corporation from excluding his proposed shareholder

16   resolution from the proxy materials.  He filed a motion for

17   preliminary injunction.

18        The court found the likelihood of success on the

19   merits, but it also had to make the necessary finding of

20   irreparable harm.  And as you've quoted in -- PETA has quoted in

21   its pleadings, the defendant in that case said, no, there's no

22   irreparable harm.  That resolution never would have passed

23   anyway.  But the court said, "This argument misstates the

24   significance of the shareholder proposal rule, which is aimed at

25   guaranteeing that shareholders have access to proxy statements

1    whether or not their proposals are likely to pass and regardless

2    of the immediate force of the resolution if enacted.   Absent a

3    preliminary injunction, plaintiff wouldn't suffer irreparable

4    harm by losing the opportunity to communicate its concern with

5    those shareholders not attending the upcoming shareholder

6    meeting."

7            That's important language because it's that language

8    that plaintiffs use to frame their claim in this case.   That is

9    the opportunity the plaintiffs claimed they wanted.   What the

10   Court said in *Lovenheim* is that the harm the statute and the

11   rule are concerned with and the right that the courts have to

12   preserve is that right; to communicate in the proxy statement in

13   connection with the annual meeting.   And the Court said in

14   *Lovenheim* that opportunity would be lost if the Court didn't

15   grant a preliminary injunction.   But here it was the plaintiff

16   and not the Court that let the opportunity go.

17           And the plaintiffs say, well, that was the Delaware

18   corporation and Merck is a New Jersey corporation, and we've got

19   a New Jersey statute.   But the fact is that the Delaware code

20   also provides for special meetings of shareholders in Title 8,

21   Corporations, Chapter 1, Section 211(D).   And that statute is

22   actually broader because it doesn't have the 10 percent in it.

23   It didn't change the fact that the Court in *Lovenheim* found that

24   irreparable harm would befall the plaintiff if the injunction

25   was not issued.

1          Third, and I think this is really where -- this is the

2     answer to the question that we were talking about at the very

3     end of the argument -- there is no private right of action under

4     the statute to seek a special meeting or to communicate with

5     other shareholders whenever you want to.  The only private right

6     implied in the statute, if any, is the right to have a proposal

7     included in a proxy statement.

8          Merck has argued that under the Supreme Court's

9     decision in *Alexander v. Sandoval*, 532 U.S. 275 (2001), I should

10    find that there is no private right of action at all under 15

11    U.S.C. Section 78n(a) and that *Roosevelt v. Du Pont*, the D.C.

12    Circuit case that plaintiffs rely on, cannot be squared with the

13    Supreme Court's more recent pronouncements on implied rights of

14    action in *Sandoval* and other cases.

15         Fortunately, I don't have to reach that issue here

16    because even if *Roosevelt*, 958 F.2d 416 from the D.C. Circuit in

17    1992, is still good law, to the extent it found an implied right

18    of action in the statute, that right was what the Court said on

19    page 417 of that opinion.  "A right to enforce a company's

20    obligation to include shareholder proposals in annual meeting

21    proxy materials."  There's nothing about the opinion that

22    extends that holding further.

23         The Court held in *Roosevelt*, "In view of Congress'

24    intent that Section 14(a) have real force, relative judicial

25    precedent, and the agency's view of the private right, we hold

1   that shareholders may seek appropriate declaratory and

2   injunctive relief when management refuses to distribute their

3   proposals."  So PETA is correct that in *Roosevelt*, the D.C.

4   Circuit authorized the cause of action that it filed here for

5   injunctive relief.  But the Court did not expressly authorize

6   the alternative remedy PETA deliberately abandoned its claim to

7   get.  It certainly isn't expressly stated in the case.  And the

8   ruling in *Roosevelt* was based on reasoning that doesn't support

9   the plaintiff's position here.

10          In fact, if I have to follow *Roosevelt*, one thing the

11  court specifically warned was that there is, quote, "a hurdle

12  facing any litigant seeking to extend an implied private right

13  of action to a class with claims not comparable to those

14  previously recognized."  So whether the claim PETA is seeking

15  has been previously recognized is something I expressly have to

16  consider.

17          The *Roosevelt* court relied on the fact that there was a

18  long history within the courts and the agency of assuming the

19  existence of a private right of action to require the inclusion

20  of shareholder proposals and proxy statements, but plaintiffs

21  here have not pointed to one single occasion where a court

22  ordered a corporation to hold a special shareholders meeting to

23  hear a shareholder proposal.  They certainly haven't pointed to

24  any where a court did have that in the face of a statute like

25  New Jersey's, and they really haven't pointed to any where a

1    court ordered a corporation to do that after plaintiff sat on

2    its rights and chose not to seek an injunction to get what it

3    wanted otherwise.   So there's no grounds for this Court to imply

4    a brand-new cause of action, which I would have to do under the

5    *Sandoval* standard because it's not in *Roosevelt*.

6           The D.C. Circuit in *Roosevelt* also noted what the

7    Supreme Court had said in the *Touche Ross v. Redington* case,

8    442 U.S. 560, and that is, "The source of plaintiff's rights

9    must be found, if at all, in the substantive provisions of the

10   1934 Act which they seek to enforce, not in its general plenary

11   equitable powers," and that was not the source of my ruling in

12   *AG*.   In that case, I was looking specifically at the IDEA

13   statute itself.

14          I have to find it in the statute.   The substantive

15   provision here that PETA is asking me to enforce,

16   Section 78n(a), is concerned with the content of proxies.   I

17   agree with what Ms. Hall said when she started in her

18   introduction about the purpose of the statute.   It's important,

19   but it is a proxy-statement statute.   It is not a

20   shareholder-meeting-scheduling statute.   There is nothing in it

21   from which one could imply a private right of action to force a

22   company to hold a special meeting, particularly one that

23   contravenes state law.

24          The statute makes it unlawful to issue a proxy that

25   violates SEC rules.   So we need to look at the rules too.   SEC

1    Rule 14(a)(9) prohibits solicitation by means of a proxy

2    statement that is false or misleading with respect to any

3    material fact.   In *J.I. Case Company v. Borak*, 377 U.S. 426, the

4    Supreme Court found a private right of action to enforce that

5    rule.   SEC Rule 14a-8, according to the D.C. Circuit in

6    *Roosevelt*, is about shareholder proposals and the right of

7    shareholders to be informed.

8           The Court found, "Access to management proxy

9    solicitations to sound out management views and to communicate

10   with other shareholders on matters of major import is a right

11   informational in character, one properly derived from

12   Section 14(a) and, like the ban on misleading statements in Rule

13   14a-9, properly enforced by a private right of action."

14          Rule 14a-8 and Rule 14a-9 are proxy-statement rules.

15   They are not shareholder-meeting-scheduling rules.   And the

16   *Roosevelt* opinion on the whole, just like the rule it addresses,

17   is all about the informational value of pre-meeting proxy

18   statements.   The legislative history it cites all addresses that

19   topic.

20          Finally, the Court in *Roosevelt* noted that its decision

21   to find the existence of a private right of action was based in

22   part on, quote, "The nature of the relief of Rule 14a-8

23   plaintiff-shareholder seeks - a declaration or injunction" --

24   they didn't stop the sentence there.   They said, "A declaration

25   or injunction requiring inclusion of the shareholders' proposal

1   in the proxy materials by management," close quote.  In other

2   words, the holding in *Roosevelt* and the existence of the private

3   right of action that it found in that case is expressly tied by

4   its own terms to the particular remedy that was sought in that

5   case.

6          Therefore, this Court is not free to apply the Court's

7   holding to some other remedy that was not before the Court in

8   that case.  Thus, even assuming that this Court is bound by the

9   *Roosevelt* decision, there is nothing in that case, the statute

10  or Rule 14(a) that supports a reading of the statute to imply a

11  private right of action to get a special shareholders meeting.

12         In light of all of those factors -- the motions, the

13  oppositions, the authorities they cite and most of all the

14  complaint itself -- I find that plaintiff's claim for an

15  injunction ordering Merck to include plaintiff's proposal in its

16  2011 annual meeting proxy materials is moot.  It was the

17  plaintiff and no one else who let it become moot.  There is no

18  other claim in the complaint.  But if the alternative remedy can

19  be deemed itself to be a claim, plaintiff's request for a

20  shareholder meeting is not in accordance with New Jersey law,

21  and there is no authority that would permit me to and no basis

22  in the statute to imply a private right of action under

23  Section 78n(a) to demand one.

24         This is a jurisdictional bar, and in the absence of

25  jurisdiction, I don't have independent grounds to issue

1    declaratory relief.  I have to have jurisdiction to just start

2    issuing declaratory opinions.  Given the absence of jurisdiction

3    in this case, the complaint will be dismissed with prejudice.

4         I appreciate the oral arguments of counsel this

5    morning.  I appreciate the briefs.  That's my ruling.  Thank

6    you.

7         (Proceedings adjourned at 11:08 a.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25         CERTIFICATE OF OFFICIAL COURT REPORTER

1

2          I, Lisa S. Schwam, certify that the foregoing is a

3    correct transcript from the record of proceedings in the

4    above-entitled matter.

5

6

7

8    _ _ _ _ _ _ _ _ _ _ _ _ _ _ — _                _ _ _ _ _ _ _ _

9    SIGNATURE OF COURT REPORTER                    DATE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25